# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| BRANDON VINYARD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:18-CV-05020-NKL ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) ) |

**ORDER**

Plaintiff Brandon Vinyard appeals the Commissioner of Social Security's final decision denying him application for disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act. For the reasons set forth below, the decision is affirmed.

**I.    Background**

Vinyard claims that he became disabled on September 15, 2014 due to a combination of impairments including arthritis, chronic pain in the knees and hips, head trauma from a motor vehicle accident in 1993, neurocognitive disorder, impaired cognitive issues, panic attacks, anxiety, social anxiety and insomnia.[1]  Tr. 215.  He filed his initial application for disability insurance benefits in November 2014, and for supplemental security income benefits the following month. Tr. 201.  Vinyard's applications were denied on March 5, 2015.  Tr. 106.  He appealed the denial and requested a hearing on April 24, 2015, and testified before an administrative law judge

---

[1] Vinyard challenges only the denial benefits with respect to his alleged mental impairments.

("ALJ") on September 20, 2016. Tr. 35–71, 111. On January 12, 2017, the ALJ found that Vinyard has not been under a disability, and on January 4, 2018, his request for review by the Appeals Council was denied. Tr. 1, 22. After exhausting his administrative remedies, Vinyard initiated this review of the ALJ's decision, which constitutes the final decision of the Commissioner subject to judicial review. Doc. 3 (Complaint).

The ALJ determined that Vinyard suffered from the following severe impairments: history of traumatic brain injury, mild cognitive impairment, anxiety, depression, post-traumatic stress disorder (PTSD), attention deficit hyperactivity disorder (ADHD), major neurocognitive disorder and arthralgia. Tr. 12–13. However, the ALJ found that Vinyard did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). Tr. 13. The ALJ considered medical opinion evidence and records from Dr. Kim Dionysus and Dr. Stacy Bray, treating neuropsychologists, Dr. Steven Adams, a psychologist who performed a consultative evaluation, Ms. Chamelle March, a treating general nurse practitioner, as well as Dr. Stephen Scher, a non-examining consultant for the State. The ALJ also considered Vinyard's testimony and that of his wife and mother-in-law, his daily activities as described in his function report, and Vinyard's medical records.

The ALJ found that Vinyard had the residual functional capacity ("RFC")

> to perform medium work . . . except that [he] is able to understand, remember and carry out simple instructions to moderately complex instructions consistent with unskilled and semiskilled work . . . and would be able to maintain attention to tasks for periods of 2 hour segments. [Vinyard] can tolerate occasional contact with co-workers and supervisors, but no contact with the general public in a setting where the individual could complete tasks relatively independently and where social interaction is not a primary job requirement.

Tr. 14. Based on testimony from a vocational expert, the ALJ concluded that Vinyard could perform jobs existing in significant numbers in the national economy, including work as a bag

loader (DOT 737.687-014), box bender (DOT 641.687-010), and burlap spreader (DOT 581.687-010), and therefore is not disabled. Tr. 21–22.

## II.  Legal Standard

In reviewing the Commissioner's denial of benefits, the Court considers whether "substantial evidence in the record as a whole supports the ALJ's decision." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). "Substantial evidence is 'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the [ALJ's] conclusion.'" *Id.* (citation omitted). The Court must consider evidence that both supports and detracts from the ALJ's decision. *Id.* "[A]s long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (citation omitted). The Court must "defer heavily to the findings and conclusions of the Social Security Administration." *Michel v. Colvin*, 640 F. App'x 585, 592 (8th Cir. 2016) (quotation marks and citations omitted).

## III.  Discussion

Vinyard argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ afforded only "little weight" to the opinions of Dr. Bray, Dr. Dionysus and Dr. Adams, Vinyard's treating and examining sources, while affording "great weight" to the opinion of Dr. Scher, a non-examining, State agency medical consultant who reviewed Vinyard's file in February 2015. Tr. 17–20. Vinyard contends that the opinion evidence from his treating and examining sources was well-supported and did not conflict with other substantial evidence in the file, and that the ALJ failed to support her conclusions as to why these opinions were entitled to little weight.

In considering a claimant's disability, each medical opinion is evaluated, but an opinion from a treating source is generally controlling so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence[.]" 20 C.F.R. § 404.1527 (2016).[2] "'[T]he opinion of a consulting [source] who examines a claimant once or not at all does not generally constitute substantial evidence' . . . on [its] own[.]" *Walker v. Comm'r, Soc. Sec. Admin.*, No. 18-1457, 2018 WL 6683397, at * 2 (8th Cir. Dec. 20, 2018) (citation omitted). However, the opinion of a treating source does not "automatically control, since the record must be evaluated as a whole." *Reese v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016) (citation omitted).

"In appropriate circumstances, opinions from State agency [consultants] . . . may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p.[3] Where the record contains differing medical opinions, "[i]t is the function of the [commissioner] to weigh conflicting evidence and to resolve disagreements." *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014) (citation omitted). Regardless of how an ALJ weighs the opinion of a treating source, "'the ALJ must give good reasons.'" *Walker*, 2018 WL 6683397, at * 2 (citing *Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016), 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2015)).

The ALJ afforded "little weight" to Dr. Steven Adams, who performed a consultative psychological evaluation on October 1, 2014. Tr. 18–19. Dr. Adams' records state that Vinyard was oriented to his surroundings, made appropriate eye contact, easily established a rapport,

---

[2] All citations to federal regulations reference the version in effect at the time the ALJ issued her decision on January 12, 2017. The relevant regulations have since been amended, but the changes did not take effect until March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 15132 (Mar. 27, 2017).

[3] Although Social Security Ruling 96-6p has since been rescinded and replaced by SSR 17-2p, SSR 96-6p was in effect at the time of the ALJ's decision.

understood verbal concepts at an average level, showed fair judgment, and had a low average general fund of knowledge and intelligence, but his speech was delayed and belabored and his impulse control was poor. Tr. 295–96. However, Dr. Adams assigned a global assessment of functioning of 35, which indicates either an impairment in reality testing or communications, or a major impairment in several areas, like work, school, family relations, judgment, thinking, or mood. Tr. 18. The ALJ concluded that Dr. Adams' opinion was inconsistent with his examination findings, the rest of the medical evidence of record, and the fact that Vinyard had recently completed school. Tr. 18–19.

Dr. Dionysus submitted a Medical Source Statement dated November 24, 2014 after the completion of a three-part neuropsychological evaluation in October 2014. Tr. 19–20, 306–15, 319–20. Dr. Dionysus concluded that Vinyard has marked limitations in his abilities to work in coordination with others, complete work without interruption from his symptoms, get along with coworkers, respond appropriately to changes in the work setting, perform within a schedule and set realistic goals or make plans independently. Tr. 320. Finally, Dr. Dionysus stated that Vinyard's impairments would cause him to miss about four days of work per month and be off task at least 20% of the time.[4] Tr. 319.

The ALJ afforded Dr. Dionysus' Medical Source Statement-Mental from November 2014 "little weight," finding that it was "inconsistent with [Vinyard's] work history, school history and medical evidence of the record." Tr. 20. Dr. Dionysus described Vinyard's medical and psychiatric history as "largely unremarkable," aside from a serious car accident when he was nine. Tr. 307. She also noted that Vinyard struggled with the entrance exam for college, but attained his

---

[4] The vocational expert stated that an individual likely to be off task 20% of the time or absent from work twice a month would not be able to sustain work in the national economy. Tr. 67–68.

Associate's Degree in computer science in January 2014. *Id.* Dr. Dionysus described Vinyard as alert and oriented, with appropriate facial expressions and eye contact. Tr. 309. Vinyard was able to maintain adequate levels of attention and concentration during his exam. *Id.* Vinyard's expressive language skills were intact, and though his speech was "somewhat halting and slow," his overall presentation was "fluent" and his "receptive language skills were intact." *Id.* His thought processes were "grossly logical and coherent" and he presented no signs or symptoms associated with a formal thought disorder or acute psychiatric disorder. *Id*.

Vinyard's test results were also mainly within the average range, with deficits in processing speed, working memory and executive function. Tr. 310, 314. Dr. Dionysus recommended that he undergo in neuropsychological counseling, and work on developing coping skills. Tr. 314–15. Dr. Dionysus also thought he could find ways to use his strengths to overcome his cognitive deficits, and that while he may need a psychiatric follow-up, none was needed at that time. Tr. 315. The ALJ found these observations inconsistent with Dr. Dionysus' Statement. Tr. 17, 20.

Dr. Bray submitted a Medical Source Statement dated August 28, 2015 after meeting with Vinyard four times. Tr. 349–50, 373–76. The statement suggested that Vinyard would miss a "variable" number of work days per month and be "off task" 25% or more of the time due to his symptoms. Tr. 349. Like Dr. Dionysus, Dr. Bray described Vinyard as having marked limitations in his abilities to work in coordination with others, complete work without interruption from his symptoms, get along with coworkers, and respond appropriately to changes in the work setting. Tr. 349–50. Dr. Bray also stated that Vinyard's abilities to maintain attention and concentration for extended periods and interact with the public are markedly limited. Tr. 350. The ALJ afforded Dr. Bray's August 2015 Medical Source Statement "little weight because it is inconsistent with [Vinyard's] work history and school history." Tr. 20.

Specifically, the ALJ had noted that Vinyard "stretches, exercises, showers, does chores, cleans the house, eats meals, plays guitar and learns something new." Tr. 15. The ALJ had also noted that Vinyard takes cares of dogs, cats and rabbits, has no problem with personal care, can handle his finances, plays video games, visits with others and attends church, where he plays in a worship team, or band, on Sunday mornings. Tr. 15–16. The ALJ also stated that though Vinyard claimed restricted ability to function socially and to concentrate, the fact that he can drive, go to technical school, fix computers, play musical instruments and video games, and perform with the worship team suggests greater ability to work than alleged. Tr. 13–14, 17, 50, 226, 229. Finally, the ALJ highlighted that Vinyard's symptoms worsened only after he had "taken on a full-time job in addition to going to school and had begun to rely on caffeine and energy drinks to get him through the long days." Tr. 16, 284–86. The ALJ found these activities inconsistent with the statements from Dr. Bray, Dr. Dionysus and Dr. Adams.

The ALJ also described why she found Vinyard's alleged complaints inconsistent with medical evidence in the record, and therefore, found that the record did not support finding a more restrictive functioning capacity. Tr. 16–17. Although Vinyard went to therapy with Dr. Bray and Dr. Dionysus, he had not sought or been under psychiatric care for anxiety or depression nor had he been prescribed any psychotropic medications. Tr. 17, 57–58. Further, Vinyard had reported using martial arts training to help him focus and otherwise trying to "deal with things" with diet and exercise. Tr. 16, 286. The record also supports finding that Vinyard ultimately quit working because of the physical toll, not his anxiety or social limitations. Tr. 76 (first stating "sanity reasons" and then stating that "knee and elbow pain . . . ultimately caused him to quit"), 295 ("health problems"), 308 ("difficult standing for long periods of time"); *but see* Tr. 45 (testifying he quit because it was "too stressful").

7

Between April and September 2014, just prior and during Vinyard's alleged disability onset, General Nurse Practitioner Chamelle March noted that Vinyard's increased stress and anxiety was situational, and likely exacerbated by both his inability to find a job in computer science and his high caffeine intake.[5] Tr. 18, 284–89. Notes from Vinyard's therapy sessions similarly focused on situational stressors. Tr. 284–92, 354–83 (discussing "situational difficulties," mental breakdown from going to school and working, difficulty with in-laws, difficulty with new co-worker). Nurse March did not recommend Vinyard for disability because he had just completed an Associate's Degree. Tr. 288–89. By June 2015, Vinyard reported increased difficulty finding words, controlling emotional impulses, maintaining concentration, and completing daily routine, but records also state that Vinyard had been making progress toward his goals and his self-reported depression and anxiety had improved from ratings of 5 or 6, to between 2 and 4. Tr. 378–81. In August 2015, Vinyard was administered tests to objectively measure his personality functioning, and his responses indicated that he was overreporting, meaning that the results were likely skewed to the negative and that problematic areas may not be as severe as reported. Tr. 371–72.

In affording Dr. Scher's opinion "great weight," the ALJ noted that Dr. Scher's opinion was consistent with this medical evidence, as well as the record as a whole. Tr. 17–18. Dr. Scher thought that Vinyard had mild limitations in activities of daily living, and moderate limitations in social functioning, concentration, persistence or pace, with no episodes of decompensation. *Id*. Dr. Scher determined that Vinyard could understand and carry out simple instructions, concentrate and persist at familiar tasks, interact as needed with others sufficiently to complete tasks and adapt

---

[5] Vinyard does not challenge the weight assigned to Ms. March's opinion. The ALJ assigned Ms. March "partial weight because she has a treatment relationship with the claimant and her opinion is consistent with her treatment notes." Tr. 18.

adequately to situational conditions. *Id.* He did not believe Vinyard was disabled. Tr. 102. The ALJ also noted that although Dr. Scher was a nonexamining source, he was familiar with the definitions and relevant evidentiary standards. Tr. 18.

Ultimately, the ALJ found that the record supported a finding that Vinyard's medically determinable impairments could cause the alleged symptoms, but Vinyard's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 17. The ALJ concluded that the severity of Vinyard's impairments did not rise to the requisite level to be disabled. Tr. 17. Although the ALJ attached only "little" weight to the opinions submitted by Vinyard's treating and examining physicians in making that decision, the ALJ provided adequate explanation as to why she concluded those opinions were inconsistent with substantial evidence in the record beyond merely conflicting with the opinion of the Dr. Scher. In sum, the ALJ's determination is supported by substantial evidence.

## IV. Conclusion

For the reasons stated above, the ALJ's determination is affirmed.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: January 7, 2019  
Jefferson City, Missouri